806 F.2d 1385
 124 L.R.R.M. (BNA) 2187, 105 Lab.Cas. P 12,156
 UNITED FOOD AND COMMERCIAL WORKERS UNION, Local Nos. 770,
889 and 1442, Petitioners-Appellants,
v.
LUCKY STORES, INC., Respondent-Appellee.
 No. 86-5586.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 2, 1986.
Decided Dec. 23, 1986.
 
 Michael D. Four, Schwartz, Steinsapir, Dohrman & Sommers, Los Angeles, Cal., for petitioners-appellants.
 Paul R. Causey, McLaughlin & Irvin, Los Angeles, Cal., for respondent-appellee.
 On Appeal from the Central District of California.
 Before WALLACE and KOZINSKI, Circuit Judges, and CARROLL*, District Judge.
 KOZINSKI, Circuit Judge.
 
 
 1
 We consider whether a dispute between three locals of the United Food and Commercial Workers Union (the union) and Lucky Stores, Inc. (Lucky) must be submitted to arbitration.
 
 Facts
 
 2
 In 1984 the union negotiated a new collective bargaining agreement with Lucky and other grocery store-employers. The agreement establishes a dispute resolution process, covering "[a]ny and all matters of controversy" involving the interpretation or application of the agreement. Art. XIII(A). Pursuant to this process, the union must first notify Lucky in writing of the "exact nature of the grievance." The parties must attempt to work out the matter informally and, failing that, submit the matter to arbitration. Art. XIII(B). The contract also provides that all issues of arbitrability are to be decided "in the first instance" by the arbitrator. Art. XIII(D)(1).
 
 
 3
 Shortly after the agreement became effective, the union filed grievances alleging that Lucky misassigned the handling of certain items and failed to provide required protection for liquor clerks. It sought arbitration, but Lucky refused to arbitrate. Lucky argued that the "purported" grievances failed to satisfy the "exact nature" requirement of Article XIII(A), in that they did not identify with particularity the employees affected, the stores in which they work or the dates of the handling.
 
 
 4
 The union brought suit to compel arbitration. Lucky defended on the ground that the union had failed to comply with the specificity requirement. In Lucky's view, the union had effectively failed to file a grievance and the duty to arbitrate therefore was never triggered. Adopting this reasoning, the district court denied the petition to compel. The union appeals.Discussion
 
 
 5
 It is difficult to imagine a contract calling for arbitration of disputes in more sweeping terms. Article XIII, titled "Adjustment and Arbitration," starts out as follows:
 
 
 6
 Any and all matters of controversy, dispute or disagreement of any kind or character existing between the parties and arising out of or in any way involving the interpretation or application of the terms of this Agreement ... shall be settled and resolved by the procedures and in the manner hereinafter set forth.
 
 
 7
 Disputes covered by this clause are to be negotiated and, if that proves unsuccessful after 15 days, submitted to arbitration.
 
 
 8
 A legitimate question may arise, of course, whether one party or the other has complied with the contract's terms and properly invoked arbitration. Some such issues of arbitrability can be decided by the courts. See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 558, 84 S.Ct. 909, 918-19, 11 L.Ed.2d 898 (1964). But the parties are free to provide otherwise and, where they do, there is no room for a court to get involved. George Day Construction Co. v. United Brotherhood of Carpenters, Local 354, 722 F.2d 1471, 1474-75 (9th Cir.1984). As Justice Brennan pointed out in the Steelworkers Trilogy:
 
 
 9
 [A]lthough the arbitrator may be empowered only to interpret and apply the contract, the parties may have provided that any dispute as to whether a particular claim is within the arbitration clause is itself for the arbitrator. Again the court, without more, must send any dispute to the arbitrator, for the parties have agreed that the construction of the arbitration promise itself is for the arbitrator, and the reluctant party has breached his promise by refusing to submit the dispute to arbitration.
 
 
 10
 United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 571, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403 (1960) (Brennan, J., concurring).
 
 
 11
 Here, the parties made their intentions abundantly clear. The contract provides in the most unambiguous terms that "[i]f a question of the arbitrability of an issue is raised by either party, such question shall be determined in the first instance by the arbitrator." Art. XIII(D)(1). Moreover, "[n]either party to this Agreement shall refuse to proceed to arbitration upon the grounds that the matter in question is not arbitrable." Id. We are at a loss to see how the parties could have provided more clearly that all questions arising under the contract, substantive as well as procedural, must be presented to the arbitrator. Thus, Lucky's claim that the union did not follow the complaint procedure, or otherwise failed to trigger the duty to arbitrate, must be presented to the arbitrator to be decided by him "in the first instance."
 
 
 12
 Lucky raises persuasive-sounding reasons why it should not throw itself headlong into arbitration without knowing more about the grievance involved. Choosing an arbitrator is costly and difficult, it complains, and the task is rendered more difficult still when insufficient information on the subject of the dispute has been provided. Whether or not this is true, it does not relieve Lucky of the agreed-upon provision. Lucky was free to negotiate an arbitration provision as broad or narrow as it wished "for there is no compulsion in law requiring [it] to include any such promises in [its] agreement." American Manufacturing, 363 U.S. at 570, 80 S.Ct. at 1364. Wise or not, a deal is a deal. "[C]ourts cannot make for the parties better agreements than they themselves have been satisfied to make." Green County v. Quinlan, 211 U.S. 582, 596, 29 S.Ct. 162, 168, 53 L.Ed. 335 (1909). Lucky's arguments are best directed to its negotiators the next time the collective bargaining agreement comes up for renewal.
 
 
 13
 Were we to accept Lucky's argument, as did the district court, we would effectively render procedural objections such as those interposed by Lucky incapable of being committed to arbitration. If Article XIII of the collective bargaining agreement does not achieve the end suggested by the union, it is difficult to conceive of language that could. In effect, we would be carving out an area where the parties cannot avoid court involvement. While such areas do exist, they are rare and reflect policies set by Congress. See, e.g., Wilko v. Swan, 346 U.S. 427, 438, 74 S.Ct. 182, 188, 98 L.Ed. 168 (1953) (securities law violations); Alexander v. Gardner-Denver Co., 415 U.S. 36, 56, 94 S.Ct. 1011, 1023-24, 39 L.Ed.2d 147 (1974) (Title VII claims); Applied Digital Technology, Inc. v. Continental Casualty Co., 576 F.2d 116, 117 (7th Cir.1978) (antitrust claims). We perceive no congressional policy, and Lucky has pointed to none, prohibiting the submission of procedural claims to arbitration.
 
 
 14
 Arbitration aims to avoid entangling the parties in protracted litigation, which can be costly and time-consuming for all concerned. This admirable goal has been uniformly and enthusiastically encouraged by the courts. See, e.g., United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960). Here, Lucky and the union solemnly promised that "[n]either party ... shall refuse to arbitrate upon the grounds that the matter in question is not arbitrable." Lucky "breached its promise by refusing to submit the dispute to arbitration," American Manufacturing, 363 U.S. at 571, 80 S.Ct. at 1364, unduly delaying the resolution of this dispute and escalating its cost. Lucky's actions in forcing the union to file this suit and pursue this appeal may have constituted bad faith. We therefore remand to the district court for a determination of whether to award costs and attorney's fees incurred by the union in prosecuting the case below.
 
 Conclusion
 
 15
 Lucky had a duty to submit the matter to arbitration and failed to do so. We reverse and remand to the district court with instructions that it enter judgment for the union and award it costs and attorney's fees if it finds the suit was brought in bad faith.
 
 
 
 *
 The Honorable Earl H. Carroll, United States District Judge, District of Arizona, sitting by designation