Robert W. CALLAHAN and Evelyn M. Callahan, Plaintiffs–Appellants,

v.

Ben G. SCHOPPE, et al., Defendants,

William Giddens, Defendant–Appellee.

No. 88–2697
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1989.

---

Roger L. Reynolds, William V. Walker, Doss Carothers, Houston, Tex., for plaintiffs-appellants.

Moriarty & Madigan, Michael A. Moriarty, Ross J. Radcliffe, Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge,
JOHNSON and JOLLY, Circuit Judges.

CLARK, Chief Judge:

Robert and Evelyn Callahan sued William Giddens, among others, seeking damages for alleged fraud. The Callahans, however, served the wrong William Giddens. Eventually they realized their mistake and voluntarily dismissed with prejudice their claims against this person. The district court imposed sanctions, pursuant to Federal Rule of Civil Procedure 11, in the amount of $3,000, which equalled Giddens' attorney fees. The Callahans appeal from the imposition of sanctions. We affirm.

■ The Callahans filed suit in the United States District Court for the Southern District of Texas, Houston Division, against William Giddens, Ben Schoppe, and the Continental Trust Company. The complaint alleged that the defendants, while acting as agents of Texas Guaranty Investment, Inc. ("TGI"), intentionally defrauded the Callahans. The Callahans asserted claims under federal and state securities statutes, the Racketeer Influenced and Corrupt Organization Act (RICO), common law fraud, and the Texas Deceptive Trade Practices Act (DTPA).

William Giddens answered the complaint, specifically denying that he was the correct party to the lawsuit or that he had any knowledge of the parties, claims, or facts in the plaintiffs' complaint. In addition, Giddens requested Rule 11 sanctions because of the "inexcusable negligence" of the plaintiffs and their attorneys in suing the wrong party. Throughout the remainder of this opinion, the plaintiffs and their attorneys are jointly referred to as the Callahans.

Six months later, the Callahans served Giddens with interrogatories, requests for admissions, and requests for production. Giddens timely answered these discovery requests and formally moved for sanctions. The Callahans then moved to dismiss their action against Giddens. In response to the motion for sanctions, the Callahans justified filing suit against Giddens by arguing that they had a good faith belief that they were suing the proper party and that they had made a reasonable inquiry into the facts. This inquiry consisted of checking the telephone listing for the name William Giddens. There was only one William Giddens listed in the Houston directory, and the Callahans therefore assumed that it was the same William Giddens who had served as the president of TGI. As Giddens attempted to advise and as his initial pleading stated, it was not.

The district court imposed sanctions pursuant to Rule 11 in the amount of $3,000, the attorney fees expended by Giddens.

The Callahans challenge the sanctions, arguing that this court cannot decide these issues because the district court did not make factual findings to support the award. The Callahans assert that they made a reasonable inquiry into the facts and the law surrounding their claims. Any higher standard, they argue, would stifle creativity and effective advocacy. The Callahans also challenge the amount of the sanctions. Defense counsel, they argue, violated its duty to mitigate the costs incurred because of this action. Finding no abuse of discretion, we affirm the imposition of sanctions.

Rule 11 of the Federal Rules of Civil Procedure imposes a duty of reasonable investigation into the facts and the law prior to filing a document with a court. The standards for imposing sanctions under this rule are set out in *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988) (en banc). The district judge's determination of the facts, whether the facts constitute a violation of Rule 11, and, if there is a violation, the amount of the sanction is reviewed under an abuse of discretion standard. *Id.* at 872–73. In this case, the reason for imposing sanctions is clear, despite the district court's failure to make specific fact findings; the Callahans were sanctioned for suing the wrong person without a reasonable investigation, and persisting in that litigation after clear notice of their error. There is no evidence, nor is there an allegation, that counsel for the Callahans did not adequately research the applicable law. Because the facts underlying and the reason for the imposition of sanctions are clear from the record, the district court's failure to make specific fact findings is not error and does not prevent this court from deciding this appeal. *Id.* at 882–83.

The district court held that the Callahans did not make a reasonable inquiry into the facts. Prior to serving Giddens, the Callahans attempted to contact the William Giddens who represented TGI, but, learning of their intentions, he refused their calls. TGI then went into bankruptcy, and therefore, according to the Callahans, they were unable to serve Giddens at his office and had to resort to the telephone directory. In passing, we note that after TGI was in bankruptcy, the records of the bankruptcy court provided a more accurate means of ascertaining the whereabouts of the Giddens who was president of TGI than the phone directory. Although there was only one William Giddens listed in the Houston phone directory, it should have occurred to the Callahans that in the nation's fourth largest city there might be more than one William Giddens or that the William Giddens they sought had no listed number in the Houston telephone directory. The Callahans did contact Giddens prior to serving him. They sent him a letter, pursuant to the Texas DTPA, demanding payment of $31,588.40 for "his" alleged fraud or threatening that suit would be instituted in thirty days seeking three times that amount under the DTPA, RICO, and the security statutes. A draft complaint was enclosed. Understandably alarmed and bewildered, Giddens contacted his attorney. Gidden's attorney twice phoned the Callahans, leaving messages. His phone calls were not returned. Suit was filed without further communication.

There was additional evidence that the Callahans had not adequately researched the basis of their complaint. Within six months of the service of the Continental Trust Company, one of the three defendants, the Callahans moved to dismiss Continental because, "Plaintiffs no longer desire to prosecute the causes of action against said Defendant." Two months later, the Callahans voluntarily moved to dismiss their action, without prejudice, against Ben Schoppe. At this time, Giddens was still a party, although the Callahans had already moved for dismissal of the claims against him. The Callahans' voluntary dismissal of all defendants evinces less than reasonable forethought in filing their lawsuit. The district court did not abuse its discretion in holding that the Callahans did not reasonably research the facts prior to filing their action. Requiring parties to determine with accuracy that they are suing the correct parties does not stifle creativity or effective advocacy. On the contrary, it is

the most basic factual inquiry in any lawsuit.

■ Once the district court has found a violation of Rule 11, it must impose sanctions. *Id.* at 876–77. The Callahans maintain that the district court abused its discretion in imposing $3,000 in sanctions, which represents the amount of attorney fees expended by Giddens. The Callahans contend that the sum is excessive and that Giddens violated his duty to mitigate his expenses. Although parties and their attorneys have a duty to mitigate expenses incurred as a result of a Rule 11 violation, that duty was not violated in this case. *See id.* at 879–81. Giddens' attorney telephoned opposing counsel twice after the demand letter was sent. After suit was filed, Giddens promptly answered, averring that he was not the proper party and seeking Rule 11 sanctions. This was a reasonable response that should have notified the Callahans that further research or communication was necessary. However, instead of calling or writing Giddens, the Callahans propounded interrogatories, requests for admissions, and requests for production to Giddens. Again, Giddens timely answered and moved for sanctions. The district court was well within its discretion in determining that Giddens had not caused his own expenses. The necessity for expenditure of attorney time was created by the Callahans.

The order of the district court imposing sanctions is

AFFIRMED.