Patrick **TOWNSEND**, Karen **Townsend**, Plaintiffs–Appellants,

v.

**HOLMAN CONSULTING CORPORATION,**
Defendant,

and

**Towers, Perrin, Forster & Crosby; Trust Services of America, Inc.; American Insurance Administrators; International Union of Operating Engineers, Local 12, AFL–CIO, Defendants–Appellees.**

Nos. 87–5825, 87–6154.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1988.

Decided Aug. 7, 1989.

See also, 862 F.2d 318. (unpublished opinion).

---

Fred L. Wright, Torrance, Cal., for plaintiffs-appellants.

Robert G. Wilson, Wilson & Reitman, Los Angeles, Cal., for the Towers defendants-appellees.

Della Bahan, Reich, Adell & Crost, Los Angeles, Cal., for the IUOE # 12 defendants-appellees.

Before PREGERSON, REINHARDT and NOONAN, Circuit Judges.

REINHARDT, Circuit Judge:

With this case, we return to a subject which has occupied much of this court's time in the last several years: the appropriateness of monetary sanctions leveled by a district judge against an attorney under Fed.R.Civ.P. 11. The rule states in relevant part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses in-

curred because of the filing ..., including a reasonable attorney's fee.

The underlying action in this case concerned the efforts of Patrick and Karen Townsend to recover expenses and damages suffered when Patrick Townsend's employer allegedly amended his employee benefit plan in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Townsends' complaint went through several iterations, the first two of which named as defendants the legal counsel for the benefit plan. After each of the Townsends' attempts to sue them, the plan's lawyers moved for sanctions under Rule 11. The second time the district court imposed sanctions, in the amount of $3000. Counsel for the Townsends appealed the sanction order, and subsequently filed a motion in the district court for reconsideration of the sanctions or a stay of their imposition pending appeal. Finding that these requests themselves violated the Rule, the district judge imposed a further sanction of $500. For the reasons set forth below, we reverse both sanction orders.

I.

Patrick Townsend, an employee of a California contracting company, participated through his employer in the Southern California Rock Products and Ready Mixed Concrete Industries Employee Benefit Plan ("the Plan"). In 1984, the Plan adopted a new program governing mental health benefits, which it called the Membership Aid Program ("MAP"). In early 1985, Townsend's daughter was hospitalized for psychiatric treatment; one month later he was advised by the Plan that he had reached the limit for psychiatric coverage imposed by the MAP.

Believing that the MAP was an unlawful reduction in benefits and alleging a variety of state tort claims, the Townsends through their counsel, a sole practitioner, filed suit in a California state court.[1] Named in the suit was the Plan itself as

---

**1.** Given our holding that the district court erred in imposing sanctions on the attorney involved in this proceeding, we do not use his name in this opinion. Even the charge of sanctionable conduct may do unwarranted damage to an attorney's reputation.

well as a series of purported Plan fiduciaries. Although the parties differ over what happened in the state proceedings, it is undisputed that the Townsends were unable to gain much of the discovery they sought from the defendants, and all of their claims, save one brought for a violation of the California Insurance Code, were ultimately dismissed. They then proceeded to federal court.

In December 1986 the Townsends filed a federal complaint, in the District Court for the Central District of California. Again suing the Plan and its alleged fiduciaries, the Townsends sought to void a series of agreements under which the Plan had promised to indemnify the fiduciaries against certain types of judgments. The suit sought damages for the medical expenses the Townsends had incurred beyond the limit imposed by the MAP and for various violations of ERISA. Also named in the suit were the Plan's attorneys, who were alleged to have advised the Plan to adopt the MAP in the first place, to have engaged in obstructionist litigation tactics in the ill-fated state proceeding, and to have advised the Plan's administrators not to make payments to which the Townsends were allegedly entitled under the Plan.

After the defendants filed a motion to dismiss and their first request for Rule 11 sanctions, the Townsends amended their complaint. The First Amended Complaint was in many respects little changed from the initial complaint. Importantly for present purposes, however, it no longer alleged that the Plan's attorneys had had any role, let alone an illicit one, in the adoption of the MAP, although it still named them as defendants. Defendants again moved to dismiss, resurrecting their motion for Rule 11 sanctions. In March 1987, the district judge granted the motion to dismiss, giving the Townsends 30 days to file a new pleading against all parties except the attorneys. The claims against the attorneys were dismissed with prejudice. The judge imposed Rule 11 sanctions in the amount of $3000, finding the conduct of the Townsends' attorney in suing the Plan's lawyers "plainly nothing short of outrageous." The Townsends' attorney appealed the imposition of sanctions in April 1987.

Also in April, the Townsends filed their Second Amended Complaint, again seeking to void the Plan's indemnification agreements and to receive damages. The defendants filed alternative motions to dismiss or for summary judgment. In May, the Townsends' attorney moved for reconsideration of the sanctions order. Alternatively, the attorney sought to stay its execution, without the requirement of a bond, pending appeal. Both sets of motions were heard by the district judge in June 1987. He dismissed all of the Townsends' claims with prejudice. He also denied the motion to reconsider the Rule 11 sanctions, or to stay the sanctions order, ruling that the Townsends' attorney's appeal of the order two months earlier had divested the district court of jurisdiction. The judge believed that the filing of the post-appeal motions flouted "obvious and well known principle[s] of law;" consequently, he deemed the reconsideration motion and the attorney's failure to offer some justification for a waiver of the supersedeas bond requirement of Fed.R.Civ.P. 62(d) in seeking a stay of the sanctions to be sanctionable in themselves, imposing on the Townsends' counsel an additional $500 in sanctions.

The Townsends appealed the dismissal of their claims and their attorney appealed the imposition of the $500 sanction. These appeals were consolidated with the earlier appeal of the district court's initial sanctions order, and with the appeal of the final order of dismissal.[2]

## II.

The issue before us is whether, under the law of this circuit, the Townsends' First

---

2. We have disposed of the appeal of the dismissal order through a separate, unpublished memorandum in which we allowed the Townsends to proceed with some of their claims and to amend their complaint. In this opinion we treat only the issue of the sanctions imposed by the district court on the Townsends' counsel in connection with his filing of the complaint and a subsequent motion. We refer to the merits of the Townsends' claims only as necessary to explain the events which gave rise to the sanctions.

Amended Complaint and/or their attorney's motion for reconsideration or a stay of the sanctions warranted the imposition of Rule 11 sanctions. In resolving this issue we first consider the general construction afforded the Rule in this circuit, and then examine the specifics of the conduct deemed sanctionable here.

## A. The Scope and Purpose of Rule 11

Since Rule 11 was amended six years ago, it has increasingly become the wellspring of the very "satellite litigation" we have consistently decried. *See, e.g., Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987); *Golden Eagle*, 801 F.2d at 1537. Requests for sanctions are regularly appended to motions to dismiss pleadings or for summary judgment; fully a thousand opinions have been published explaining the Rule and honing its interpretation. *See* Note, *A Uniform Approach to Rule 11 Sanctions*, 97 Yale L.J. 901 (1988). The saving grace of this effort, if there is one, is the enunciation, in a relatively short period, of some well-defined principles which should govern the imposition of sanctions.

With the Rule's amendment in 1983, we revised our prior characterization of sanctionable conduct in a significant way by removing the longstanding requirement that the subjective bad faith of the pleader be demonstrated. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.1986). In *Zaldivar*, we concluded that subjective analysis of an attorney's conduct is inconsistent with the new Rule's focus on "reasonableness," a concept normally thought to admit only of objective inquiry. *Id.; see also Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir.1987).

The Rule applies to "pleading[s], motion[s] and other paper[s] of a party," punishing those which: (1) constitute "frivolous filings" or (2) use "judicial procedures as a tool for harassment." *Stewart*, 845 F.2d at 201. Pleadings of the latter type are more generally known as papers "filed for an improper purpose." *Hudson*, 836 F.2d at 1159, *quoting Golden Eagle*, 801 F.2d at 1536. The notion of "frivolousness" for purposes of Rule 11 has been limited to situations where a pleading is manifestly "baseless" or "lacking in plausibility." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir.1988); *quoting California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir.1987). As we explain below, we focus in this case on the "frivolous" prong of Rule 11.

Our cases have advanced two principles which a court must consider when it assesses a party's request that it impose, or when the court considers imposing *sua sponte*, sanctions against an adverse party for a "frivolous filing." First, in determining whether a pleading is frivolous, the proper scope of inquiry is the *entire* pleading; the court must determine whether the pleading as a whole, not merely "a particular argument or ground for relief," is frivolous within the meaning of the Rule. *Golden Eagle*, 801 F.2d at 1540.

■ Second, it should by now be axiomatic that the mere fact that a claim does not prevail, or that a court ultimately determines that a lawyer's view of the law is "wrong," is insufficient to warrant sanctions under any aspect of Rule 11. *Hudson*, 836 F.2d at 1159; *Rachel*, 831 F.2d at 1508; *Zaldivar*, 780 F.2d at 830. Rule 11 was never intended to punish attorneys simply because they do not prevail on their claims, nor should its overzealous application prevent them from raising innovative claims, even if they eventually fail. So long as a pleading is not lodged for an "improper purpose" and meets the explicit language of the Rule—that it "is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"—it cannot serve as the basis for sanctions under Rule 11. *See Golden Eagle*, 801 F.2d at 1539–40 (noting that the Rule does not distinguish between positions which are "supported by existing law and [those] that would extend it").

■ The Rule 11 frivolousness inquiry is thus far more narrow than some have assumed. It looks at the objective reasonableness of an entire pleading, not the subjective intent of the pleader or the merit of

any one of his arguments, *Stewart*, 845 F.2d at 201; *Hudson*, 836 F.2d at 1159, and, as a part of this examination, considers whether the attorney fulfilled his duty of "reasonable inquiry" prior to signing a pleading. *See e.g., Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 557–58 (9th Cir.1986), *cert. denied sub nom. Alioto & Alioto v. E.F. Hutton & Co., Inc.*, 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987). Ultimately, the appropriateness of Rule 11 sanctions must be predicated upon a finding that a pleading was objectively frivolous when it was filed, not whether it is "later found lacking in evidentiary foundation," *Cunningham v. County of Los Angeles*, 859 F.2d 705, 714 (9th Cir.1988), or ultimately fails on the merits. *Hudson*, 836 F.2d at 1159.

With the (now almost traditional) recitation of recent Rule 11 jurisprudence completed, we turn to the two sanction awards challenged in this case.

### B. *The Claim Against the Plan's Attorneys*

The district court imposed $3,000 in sanctions on the Townsends' attorney for suing the Plan's lawyers. It appears that the court found that this claim both was frivolous within the meaning of Rule 11 and had been filed in order to harass the Plan's lawyers. The court relied on its finding that the "undisputed facts" showed that the Plan's lawyers had had no involvement in the *adoption* of the MAP.

■ There appears to be a problem with this finding of the district court. The court's order strongly suggests that the sanctions were based on the First Amended Complaint, although it fails specifically to identify the pleading involved. Yet, the First Amended Complaint, unlike the origi-

nal version, did not allege that the Plan's lawyers had participated in the adoption of the MAP. All that the First Amended Complaint alleged was that, in their capacity as the Plan's regular counsel, the lawyers had improperly advised the Plan not to pay the Townsends' claims.[3] The Plan's lawyers undoubtedly contributed to the confusion by failing to advise the district court, in their request for sanctions, that the Townsends' amended complaint no longer alleged that the Plan's counsel had played a role in the adoption of the MAP.[4]

■ Preliminarily, we address the district court's apparent conclusion that the claim against the Plan's attorneys was included for an improper purpose. We note first that there is nothing in the order itself, and we have been able to find nothing in the record, which supports a conclusion that—merely because the complaint named the attorneys as defendants—it was filed for an improper purpose. The district court made no findings of fact with respect to improper purpose, nor does its order refer specifically to the reason(s) upon which the court apparently concluded that the pleading had been filed to harass. In light of these facts, we cannot affirm the imposition of Rule 11 sanctions on an improper purpose ground. An order sanctioning counsel for engaging in "the type of 'harassment' that Rule 11 proscribes," should be based on specific supportable factual findings warranting the conclusion that the pleader "unnecessarily delayed and multiplied the proceedings" or that the pleading was "pretextual." *See Stewart*, 845 F.2d at 201. The district court failed to make any such findings here; nor does the record independently support a conclusion that sanctions based on Rule 11's improper

---

**3.** In light of the fact that we reverse the imposition of the $3000 sanction for the reasons stated below, we do not determine whether the lack of specificity in the district court's sanction order might itself require reversal of the district court's finding that the complaint was frivolous.

**4.** We deal with the problems created by casually prepared motions for sanctions *infra* at 794. We note also that the Plan's lawyers now appear to realize the problem with the district court's

order. In their brief they attempt to finesse the issue by asserting that there was nothing to preclude the District Court from sanctioning the Townsends' attorney for the original complaint. This assertion is irrelevant, for, if the district court's order was, as it appears, directed at the First Amended Complaint, we cannot affirm the order because of claimed violations in another pleading.

purpose prong were justified in this case.[5] We must therefore proceed to analyze the order exclusively in reference to the frivolousness component of Rule 11.

Turning to the "frivolous" inquiry, we recognize that the Plan's attorneys themselves recognize its ambiguity with respect to the pleading actually sanctioned. Nonetheless, they argue, even if we conclude (as the order seems to show) that the order sanctioned allegations not actually before the court, we should uphold the imposition of sanctions since the claims against them pleaded in the First Amended Complaint were themselves "baseless." Thus, they argue, the First Amended Complaint can properly serve as the basis for a finding of "frivolousness." Although we will assume that argument to be correct from a procedural standpoint, our conclusion is unchanged. Our precedents make clear that, even if the claim against the Plan's lawyers were "baseless," Rule 11 sanctions would still have been inappropriate.

As explained above, the law of this circuit clearly requires a judge determining whether a pleading is frivolous to look at the entire pleading objectively, and prohibits the imposition of sanctions on the basis of a single frivolous argument or ground for relief. *Golden Eagle*, 801 F.2d at 1540–41; *see also Stewart*, 845 F.2d at 201 (citing *Hudson*, 836 F.2d at 1159).[6] This requirement is a manifestation of the devel-

opment of distinct requirements for Rule 11 frivolousness and improper purpose "prongs." *See Community Electric Serv. of Los Angeles v. National Electrical Contractors Ass'n*, 869 F.2d 1235, 1243 (9th Cir.1989) ("frivolous as a whole" analysis is distinct from the "different examination" a court must make to determine whether a pleading has been filed for an improper purpose) ("*Community Electric*"); *Zaldivar*, 780 F.2d at 830–31 (distinguishing between the "two separate problems" addressed by the two "prongs" of Rule 11); *Golden Eagle*, 801 F.2d at 1537–38 (discussing the two separate parts of Rule 11, which impose differing "requirements" on litigants). Thus, it is critical that a court first determine the basis upon which Rule 11 sanctions were imposed and then ensure that in its application of caselaw it bears in mind the distinctions between the two "prongs" of the Rule.

When viewed with this caveat in mind, it becomes clear that *Hudson* is not, as the dissent claims, *infra* at 799, inconsistent with our decision today. In *Hudson*, the court determined that the damages prayer of a *single* counterclaim was baseless and "unconscionable." On the basis of this finding, it concluded that the defendant's attorney "had filed the counterclaim to harass [the plaintiff]." 836 F.2d at 1162. *Hudson* recognized that instituting a claim

5. The dissent, through quotation of a snippet of the oral argument on appeal, claims that there was a "direct admission" of improper purpose in this case. Dissent at 797. We first note that, when placed in the context of the entire argument, this "direct" statement is far more equivocal, and far less dispositive, than the dissent implies. Even so, we need not belabor the point with extended quotation from oral argument, for discussions on appeal are irrelevant to our review of whether the *district court* had a proper basis for imposing sanctions. The "record" that matters is that before the district judge at the time sanctions are imposed; we are unable to validate sanctions based either on hindsight or on information offered after the district court's ruling.

6. Interestingly, *Stewart* and *Hudson* are cases in which Rule 11 sanctions were upheld. It is fundamental to note, however, that in *Stewart* an award of Rule 11 sanctions was upheld, *not*

because a pleading (in that case, a third-party complaint) was frivolous, but because the district court has specifically determined, and had made proper findings which demonstrated, that the pleading was "pretextual" and had been filed solely to "harass" the opposing party. The court in *Stewart* thus upheld the award of sanctions because it concluded that the third-party complaint had been *filed for an improper purpose.* 845 F.2d at 201 (concluding that the third-party plaintiff's pleading constituted "precisely the type of 'harassment' that Rule 11 proscribes") (citing *Zaldivar*, 780 F.2d at 832 n. 10). In fact, the only discussion of frivolousness in *Stewart* is its statement of the general principles of the analysis of pleadings described above. Immediately after it sets forth the principles for which we cited it here, *Stewart* turns to the improper purpose discussion which constitutes the bulk of its analysis. The relevance of the *Hudson* decision to our analysis here is discussed in the text, *infra* at 795–96.

for damages that might destroy the defendant economically, or cause him to abandon rights he might otherwise assert, could well constitute harassment, regardless of the merits of other aspects of the pleading. Thus, as we have said elsewhere, *Hudson* is essentially an "improper purpose" case. *See Community Electric*, 869 F.2d at 1243 ("[*Hudson*'s] holding rested on the improper purpose of the employer and the harassing nature of the counterclaim").[7]

 Returning to the facts of this case, it is uncontroverted that the Plan's attorneys were the only parties alleged to have been improperly sued. Given this fact and given the nature of the pleadings filed by the Townsends' attorney, our prior holdings that a single frivolous claim in a multiple-claim pleading cannot render the pleading sanctionable under Rule 11 preclude a holding here that the single claim with respect to the Plan's attorneys in a pleading with multiple claims against multiple parties can be sanctioned under the frivolousness prong of the Rule. Since the judge considering Rule 11 sanctions is required to examine the entire pleading, a pleading which contains a non-frivolous claim cannot be sanctioned as frivolous under Rule 11, even if other claims in that pleading are frivolous. The same analysis applies to instances in which a pleading names a *party* frivolously. Accordingly, we hold that the improper inclusion of a party in a complaint which properly includes other parties (as we have already held, *see supra* n. 2, the Townsends' pleadings do) cannot render the complaint frivolous for purposes of Rule 11 sanctions.[8]

Finally, it bears noting that appellees' arguments blur the distinction between a motion to dismiss a claim under Fed.R. Civ.P. 12(b)(6) and a motion for sanctions under Rule 11. The distinction is worth reiterating, particularly inasmuch as many attorneys now combine the two motions, seemingly as a matter of course, when responding to a complaint. As we have said before, "the key question [in determining whether Rule 11 has been violated] is whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law. Therefore, courts 'do not examine the complaint in the same manner as a court considering a Rule 12(b)(6) motion', because ultimate failure on the merits is irrelevant." *Hudson*, 836 F.2d at 1159 (quoting *Zaldivar*, 780 F.2d at

---

7. It appears to us that the dissent either has overlooked, or has ignored, the distinction between frivolousness and improper purpose analyses, or has, at the least, failed to appreciate the full implications of these differences for our decision today. The dissent thus erroneously equates, without explanation, pleadings filed for improper purposes with pleadings deemed to be frivolous. It is illogical, and counter to *Golden Eagle*, to hold a pleading, examined as a whole, frivolous if it states a colorable claim for relief. By contrast, there is no logical difficulty with a finding that the inclusion in a pleading of an unconscionable damages claim (or any other claim), *for the purpose of harassing the opposing party*, renders the pleading sanctionable under Rule 11. *See Community Electric*, 869 F.2d at 1242–43 ("Rule 11 permits sanctions [for frivolousness] only where the pleading as a whole is frivolous." But, "[a]n entire pleading has a harassing or improper purpose if the litigant included one of the claims or allegations with that purpose.") As we recognized in *Community Electric*, and reemphasize here, *Hudson*'s "independent analysis of the prayer for relief," *Id.* at 1243, was appropriate because the *Hudson* court was engaging in an improper purpose inquiry. Here, we are concerned only with the alleged frivolousness of the Townsends' pleadings.

8. The question we decide today has not previously been analyzed or squarely addressed in this circuit, although two cases of which we are aware have assumed that sanctions under Rule 11's frivolousness component prong might be available for improperly naming a party in a suit. The *Rachel* court silently assumed that sanctions could be awarded for naming without reason one of two codefendants in a suit. *Rachel*, 831 F.2d at 1508. The court did not address the underlying propriety of sanctioning a pleader for naming one of two parties incorrectly, for it determined that—even assuming sanctions to be possible in such a case—they were unwarranted given the facts before it. *Id.* Similarly, in *Community Electric*, the court (citing *Rachel*) stated that "we have considered imposing sanctions for improperly naming a party in a suit," 869 F.2d at 1245, and offered in a single sentence a potential standard for awarding sanctions in such a case. *Id.* As in *Rachel*, however, the *Community Electric* court ruled that, even if one assumed sanctions possible, they were unjustified in that case. *Id.* at 1245–46. Accordingly, today's case is the first in which we are required to decide the issue.

830–32 (citations omitted)). There is no question that the Townsends' complaint taken as a whole, as it must be for Rule 11 purposes, stated at least "an arguable claim." While the district court may have (rightly or wrongly, *see* n. 2, *supra*) concluded that their claim was meritless, it could not rightly have imposed sanctions upon their attorney for his amended pleading.[9]

### C. *The Motion for Reconsideration or a Stay of the Sanctions*

■ The Townsends' attorney ran afoul of the district court a second time, this time for $500, when he filed a motion to reconsider the $3000 sanction or, in the alternative, to stay its imposition pending appeal. In imposing the second sanction, the district court noted that, under "an obvious and well known principle of law," it no longer had jurisdiction over its original sanctions order, which had already been appealed by the attorney. The new sanction the court imposed was directed at the request for a stay as well, for the court concluded that the attorney had failed to comply with the requirement of Fed.R. Civ.P. 62(d) that a supersedeas bond be procured in order to obtain a stay pending appeal.[10] In examining the request for reconsideration of the sanctions and the waiver of the bond requirement, for the reasons explained *supra* at p. 793 we start from the premise that, if the position of the Townsends' attorney in either respect was not "frivolous," the second sanction order must be vacated.

We turn first to the attorney's request that the sanction order be stayed. While Rule 62(d) generally requires the posting of a bond in order to obtain a stay of a money judgment (or the payment of money sanctions) pending appeal, courts have deviated from the terms of Rule 62 when the equities so required. *See, e.g., Intern. Telemeter v. Hamlin Intern. Corp.*, 754 F.2d 1492, 1495 (9th Cir.1985) ("[a]lthough Federal Rule of Civil Procedure 62 provides that a supersedeas bond may be used to stay execution of a judgment pending appeal, the court has discretion to allow other forms of judgment guarantee") (citing *Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir.1979)). *See also Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 636 F.2d 755, 759–61 (D.C.Cir.1980) (Rule 62 "in no way necessarily implies that filing a bond is the *only* way to obtain a stay") (emphasis in original); 7 Moore, *Federal Practice* (2d Ed. 1987) ¶ 62.06 at 62–33.

■ While the most common justification for allowing alternatives to a supersedeas bond is the financial hardship that the bond may impose on appellants, *see Poplar Grove Planting*, 600 F.2d at 1191, the district court has broad discretionary power to waive the bond requirement if it

---

**9.** The dissent cites our recent decision in *Partington v. Gedan*, 880 F.2d 116 (9th Cir.1989), arguing that it is "directly contrary" to the result here. Dissent at 799. In *Partington*, we imposed Rule 11 sanctions on appeal against a party that had baselessly moved for sanctions under Fed.R.App.P. 38 in a motion which it had appended to its brief on appeal. While the panel was divided on the question whether Rule 11 provided a proper basis for the sanctions and while at least one circuit has held that Rule 11 does not reach appellate conduct, *see Leigh v. Engle*, 858 F.2d 361, 370 n. 5 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1528, 103 L.Ed.2d 833 *Hays v. Sony Corp. of America,* 847 F.2d 412, 420 (7th Cir.1988), in *Partington* there was no disagreement that sanctions were appropriate. *Partington,* 880 F.2d at 135 (dissenting opinion). More to the point at issue, and contrary to the view of the dissent here, in *Partington* we recognized that in federal appellate courts parties frequently attach separate procedural or collateral motions to their briefs on the merits. The opinion, accordingly, treated the motion which gave rise to the sanctions as "a separate motion to th[e] court, severable from the balance of the brief." *Id.* at 130. The situation in *Partington* is thus wholly different from that we address here. Our cases are clear that in the district court a pleading is a "pleading," the parts are not severable, and sanctions may not be imposed unless the pleading as a whole is frivolous.

**10.** Fed.R.Civ.P. 62(d) provides in relevant part:
(d) STAY UPON APPEAL. When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay ... The bond may be given at or after the time of filing the notice of appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

sees fit. The appellant is himself an officer of the court and a failure to comply with a court-ordered sanction could subject him to a variety of collateral sanctions (including professional suspension and disbarment) not generally operative against others. Under these circumstances, a court could well conclude that the supersedeas bond, essentially a judgment insurance policy, is unnecessary. We need not so hold here, nor need we examine the question further; our current concern is only whether, by failing to post a bond and asking instead that the court grant a stay, the Townsends' attorney engaged in sanctionable conduct. Given his unique status as an officer of the court and the fact that courts have in the past allowed alternatives to the procedure described in Rule 62(d), we cannot say that the attorney's attempt to have the court exercise its discretionary power and issue a stay was *frivolous within the meaning of Rule 11.*

The Plan's attorneys, again apparently realizing a problem with the district court's order, argue that discussion of the exceptions to Rule 62(d) represents an impermissible "post hoc rationalization" of the sanctionable conduct of the Townsends' attorney. We disagree. The purpose of Rule 11 is to ensure that attorneys do not bring motions which are wholly lacking in factual and/or legal foundation. The motion we consider here, inasmuch as it requested a discretionary stay from the district judge, sought a remedy approved in this and other circuits. Thus, no matter what the Townsends' attorney may himself have considered the law to be, his motion was not *objectively* unreasonable. The imposition of sanctions under Rule 11 was therefore unwarranted. *Hudson*, 836 F.2d at 1159 (conduct that is "of objective reasonableness under the circumstances" does not violate Rule 11).[11]

### III.

A final observation is appropriate. The Plan's attorneys moved for sanctions with

each motion filed in this case. Each request appears to be essentially a boilerplate recitation of basic Rule 11 caselaw, with little or no material modification from version to version. We do not think that Rule 11 is properly used when used out of habit or as a standard device to burden an adversary with responses on issues collateral to the merits of a claim. Nor should the Rule serve as the means through which attorneys, as a matter of course and in the guise of assisting the court in maintaining high standards of attorney conduct, seek to have the court award them the costs and fees expended in responding to pleadings. As this case illustrates, casually drafted Rule 11 motions can distort the actual course of litigation and confound and confuse all concerned. While the Rule itself has a certain value, and while the possibility of sanctions for abuse of the pleading process may in some cases force attorneys to hew to their ethical duties, cases like this one demonstrate that it might be well for courts to give scrutiny to the Rule 11 movant equal to that they afford the Rule 11 target. *See* n. 8, *supra.* All concerned: trial courts, appellate courts, attorneys, and most important the litigants themselves (who wait, and in many cases pay, while the "professionals" fight over "frivolousness"), suffer from the overlitigation of sanctions questions. As noted *supra* at 7, the first five years of Rule 11 litigation produced over a thousand published opinions interpreting the Rule. With few exceptions, those affected by the flood of Rule 11 motions would not object if the next five years brought substantially fewer.

REVERSED.

NOONAN, Circuit Judge, dissenting:

The majority's opinion is a straightforward gutting of Rule 11. Before analyzing the court's opinion, it is worth restating the case.

The Townsends' original Complaint, filed December 18, 1986, alleged that the defen-

---

**11.** In light of our holding that the request for a stay did not warrant Rule 11 sanctions, we need not decide whether the alternative request, that

the court reconsider the $3000 sanction, was frivolous.

dants Robert Wilson and John Reitman were a partnership and that Robert Wilson had advised the Plan "to adopt MAP, knowing that it was not in the best interests of Plan beneficiaries." This allegation was amplified by the Townsends' First Amended Complaint which asserted that all the defendants, including Wilson, Reitman and their partnership "were active in designing, planning and implementing" MAP; that the adoption of MAP was for the purpose "of enabling defendants to make more money from the Plan"; and that "by using the MAP program as a means to secretly reduce benefits without good reason, and to increase the amount of moneys they would receive from the Plan, defendants breached their fiduciary obligations to Plan beneficiaries." Finding that these allegations violated Federal Rules of Civil Procedure 11, the district court awarded sanctions of $3,000 against counsel for the Townsends.

The district court's order of March 16, 1987 reads in relevant part:

As to the plan's lawyers, the undisputed facts are that they did not participate in what is the alleged (if inadequate) basis of the lawsuit—the adoption of the amendment to the plan—but were merely called in to defend the plan in the state court lawsuit and advise the plan and the connected entities in their capacities as lawyers. Plaintiff shows nothing contradicting this showing. Not only does plaintiff not state a cause of action against the plan's lawyers, or submit any facts in opposition to the motion for summary judgment, the act of suing the opponent's lawyers in this situation is plainly nothing short of outrageous. Plaintiff did not make the "reasonable inquiry" required by Rule 11 and it is found that suing the lawyers was not in good faith *and for the purposes of harassment.* Plaintiff's attorney, [name omitted], shall pay to Wilson and Reitman the sum of $3,000 in the form of sanctions under Rule 11. The court also advises plaintiff's attorney to read Rule 11, and the cases under it, with respect to the remaining allegations. The day has long passed in federal court where a suit may be brought on speculation to see what might turn up, as it may have formerly been the custom in state court; Rule 11 means what it says and is not an empty letter. (Italics supplied)

Rule 11 provides that the signature of an attorney constitutes a certificate by him that he has read the pleading he has signed and that "to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact ... and that it is not interposed for an improper purpose"

In the Rule 11 hearing before the district court, counsel did not point to any inquiry that he had made that would have furnished the basis for asserting the lawyers had advised adoption of the Plan, had designed, planned, or implemented the Plan, or had made more money by reason of the Plan's adoption. Counsel had no grounds for making the allegations in the Complaint or in the First Amended Complaint against Wilson, Reitman and the partnership. Counsel had no basis for making defendants out of the lawyers opposing him in the state court.

In the oral argument of the case before this court the sanctioned attorney was asked why he had made defendants out of the opposing law firm. The colloquy went as follows:

**Judge Pregerson:** Well, what were you going to get? What did you hope to get from the law firm?

**Attorney:** *Well, what I hoped to get from the law firm was their recusal. Period.* Their recusal from further representation of the Plan itself because of what we perceived to be conflict of interest. You know, if he could be perceived to be a fiduciary and he's advising the Plan in that fashion, then he's asking the Plan to waste its money basically.

**Judge Pregerson:** You could have brought a motion to disqualify the firm for conflict of interest.

**Attorney:** I suppose that could have been done.

(Italics supplied)

This statement of the sanctioned attorney amounts to a direct admission of the improper purpose with which he named the attorneys in his suit. As the improper purpose has been acknowledged, it is difficult to see why the count finds that it has not been established. According to the court's own announced standards, a pleading brought for an improper purpose violates Rule 11 and should be sanctioned. The case should end with this conclusion.

Our court has earlier held that Rule 11 "permits the imposition of sanctions only when the 'pleading, motion or other paper' itself is frivolous, not when one of the arguments in support of a pleading or motion is frivolous." *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (9th Cir.1986). That case does not address the situation where a pleading, frivolously and improperly, makes defendants out of persons entirely unconnected with the plaintiffs' cause of action. The dragging in of such innocent persons is not of course "an argument." It is the addition to a case of persons going about their lawful business and not subject to judicial process except for the effrontery of a plaintiff who has an ulterior and improper reason for making them defendants. When the innocent parties are themselves lawyers and attacked in this fashion by a fellow member of the bar, the conduct of offending counsel is, as the district court concluded, "outrageous." Rule 11 applies with full force. Sanctions are mandatory.

When the sanctioned attorney moved for reconsideration of the sanctions he already had filed a notice of appeal with this court. The district court no longer had jurisdiction. The sanctioned attorney had no basis in law for making his motion. The motion was entirely baseless. He had failed to inquire into the law. Sanctions under Rule 11 were again mandatory and were again properly applied. *Pipe Trades Council, Local 159 v. Underground Contractors Association of Northern California*, 835 F.2d 1275, 1281 (9th Cir.1988).

To reach its remarkable result to the contrary the opinion of the majority converts *Golden Eagle* from a case about mis-identification of an argument to a case saying that the entire pleadings must be frivolous for Rule 11 to be invoked. Nothing in *Golden Eagle*, however, prohibits the imposition of sanctions on the basis of a single frivolous ground for relief.

The majority compounds its misreading of *Golden Eagle* by invoking two cases in which Rule 11 sanctions were upheld. *Stewart v. American Intern. Oil and Gas Co.*, 845 F.2d 196 (9th Cir.1988); *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156 (9th Cir.1987). Neither case stands for the proposition for which it is cited. In *Stewart* counsel were subjected to Rule 11 because they had filed a groundless third party complaint and had done so for an improper purpose. The court held that on either basis the district court's imposition of sanctions would be upheld. Not a word in *Stewart* was addressed to imposition of sanctions being prohibited if there is only a single frivolous ground for relief.

*Hudson* far from supporting the majority opinion is directly contrary to it. In *Hudson* the sanctioned complaint was found generally to be legitimate but the prayer for damages was to be excessive. *Hudson* at 1163. This court remanded the case to permit the district court to impose Rule 11 sanctions for the damages prayer alone. *Id.* at 1164. The very contention that the majority opinion makes in this case that *Golden Eagle* prohibited the sanction was made by the sanctioned law firm and was answered negatively by *Hudson*. It is extraordinary that the court should attempt to invoke *Hudson* on its side when it flouts *Hudson* in fact.

The opinion is also contrary to another case cited by the majority, *Partington v. Gedan*, 880 F.2d 116 (9th Cir.1989). In *Partington* sanctions were awarded under Rule 11 against the appellees for frivolously seeking Rule 11 sanctions against the appellants. Although chracterized as a separate motion, the request for Rule 11 sanctions was made in the appellee's brief, which, taken as a whole, was far from frivolous. In passing, *Partington* reaffirmed the established rule of this circuit that Rule 11 applies to appeals—a rule

**800**

which the majority in the present case appears to doubt or regret.

The opinion is not only squarely contrary to current Ninth Circuit law; it puts the circuit in conflict with other circuits. The general rule is clear that a lawyer may not name a party without adequate factual investigation in hopes that some basis will emerge during discovery. *Southern Leasing Partners Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir.1986). Negligently suing the wrong party is not countenanced. *Callahan v. Schoppe,* 864 F.2d 44 (5th Cir. 1989). A fortiori, suing the wrong party is unacceptable when the wrong party, as here, is sued deliberately.

The majority opinion compounds its basic disrespect for precedent by presenting a confused analysis of what the district court in fact did. The district court sanctioned counsel both for the original Complaint's allegations against opposing attorneys and for the Amended Complaint's allegations against the opposing attorneys. The majority makes a mystery out of what is evident on the record. Moreover, even if the Amended Complaint had improved on the original Complaint, there was no bar to the imposition of sanctions for the first baseless charges against the defendants' lawyers. *Greenburg v. Sala,* 822 F.2d 882, 885 (9th Cir.1987). *See also Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600, 603 (1st Cir.1988).

Again, in treating the sanctions for the motion to reconsider, the majority opinion repeats it basic error of insisting that the whole pleading must be groundless and then confuses what the district court did by engaging in analysis of the requirements for a stay—an analysis which is irrelevant to the question of the district court's jurisdiction to have heard a motion for reconsideration. Again, Ninth Circuit precedent is flouted. *Pipes Trades Council, Local 159,* 835 F.2d at 1281.

The whole opinion breathes a hostility to the imposition of sanctions that is truly extraordinary. The court ends with marked disapproval of lawyers who legitimately seek the protection of the rule. The court complains that "much of this court's time" in the last six years has been occupied by the subject of Rule 11 sanctions. In fact, since August 1983 there have been no more than 73 published opinions addressed to Rule 11 in this circuit. This number of opinions is less than one percent of the total opinions filed by this court. It is hard to believe that anyone seriously thinks that issues arising in less than one percent of this court's cases take up "much of its time."

The opinion's hostility to Rule 11 is further reflected in its complaint that nationwide there are now about 1,000 decisions construing Rule 11. The proper reading of that statistic is that Rule 11 was addressed to a very serious problem and that there has been a great need to apply the rule and, necessarily, to refine the rule in applying it. The Advisory Committee on Rules stress that the purpose of the 1983 amendment was "to reduce the reluctance of courts to impose sanctions" and to reach "a greater range of circumstances." Fed.R. Civ.P. 11 advisory committee note. The rule was premised on the position that a federal court should not be treated as "the private playpen of the litigants." Miller, *The Adversary System: Dinosaur or Phoenix?,* 69 Minn.L.Rev. 1, 19 (1984).

There are lawyers and judges who seriously and in good faith believe that professional responsibility is exercised by most lawyers and that more harm than good is done by the supervisory intervention of judges. These persons may be right and are of course entitled to their personal views. But when the issue is before this court, the court is not entitled to disregard the authority of the Supreme Court of the United States which promulgated the Rules of Civil Procedure, nor is the court free to disregard the authority of Congress which has approved the rules; nor is the court at liberty to disregard our own precedents and strike out in a direction without basis in law.