[No. 23248–7–I.   Division One.   February 26, 1990.]

ELAINE J. BRYANT, ET AL, *Plaintiffs,* V. JOSEPH TREE, INC.,
ET AL, *Respondents,* MORRIS H. ROSENBERG,
ET AL, *Appellants.*

*Malcolm Edwards, Howard Goodfriend, Edwards, Sieh, Wiggins & Hathaway, P.S.,* and *Stephen Sirianni,* for appellants.

*Gerald Bopp, Eugene Bolin,* and *James Donohue,* for respondents.

PEKELIS, J.—Appellants Morris Rosenberg, Stuart P. Koch and Marilyn Sellers appeal the trial court's order imposing sanctions against them pursuant to Superior Court Civil Rule 11. Appellants contend that the trial court erred in imposing CR 11 sanctions where there was no determination that the complaint filed against the respondents was without merit.

Respondents/cross appellants maintain that the trial court properly imposed CR 11 sanctions against appellants, but assign error to the trial court's refusal to impose sanctions against the law firm of Mussehl, Rosenberg, Jeffers & Cotter and appellants' client, Elaine Bryant. In addition, respondents contend that the trial court erred in failing to find that the appellants violated RCW 4.84.185 (the frivolous claim statute). Finally, both respondents and appellants request attorneys' fees on appeal.

## I
### FACTS

The circumstances leading up to the trial court's imposition of sanctions involve complicated facts, beginning with Elaine Bryant's separation from her husband of 30 years in the summer of 1985.

In July 1985, Elaine Bryant filed a dissolution action and obtained a restraining order prohibiting her husband, Fred Bryant, from transferring or encumbering any of the Bryants' community assets. After a brief reconciliation, Elaine Bryant separated from her husband again. She then retained an attorney, appellant Sellers, and filed a petition for legal separation. Sellers commenced discovery in that action by serving Fred Bryant with interrogatories and requests for production of documents. However, Fred Bryant refused to answer or respond, asserting that his religious beliefs prevented him from complying.

In the face of Fred Bryant's refusal to cooperate in discovery, Sellers attempted to determine the nature and extent of the Bryants' community assets. Elaine Bryant was relatively ignorant about the marital community's financial affairs. She had not taken an active role in managing the community assets during her marriage, and, in 1968, she had given her husband a power of attorney to act on her behalf.

Accordingly, Sellers, along with her client, began reviewing bank statements and researching public records in an effort to determine the extent of the Bryants' assets, including the location of various parcels of real property owned by the Bryants during their marriage. In the course of that research, they discovered that Fred Bryant had transferred community assets to (1) various corporations in which he had a substantial interest; (2) his attorney or corporations in which his attorney had a substantial interest or involvement; (3) an irrevocable trust of which his daughter was trustee; (4) his daughter; and (5) various business associates and church members. These transfers were accomplished by using Elaine's power of attorney and occurred during periods the restraining orders were in effect and/or after the parties had separated.

At a hearing before the Family Law Court Commissioner, Sellers presented the information she and Elaine had garnered from their research. Based on this information, the Commissioner surmised that Fred Bryant had violated RCW 26.16 by breaching his fiduciary duty to the marital community. The Commissioner commented:

> What I see and what I infer is that at every point where Mr. Bryant's financial holdings have been threatened either in civil litigation or in domestic litigation, a transfer has taken place, and some very nicely sophisticated transfers, and I'm concerned about conspiracy. I'm concerned about collusion.

(Italics omitted.) The Commissioner entered an order authorizing Elaine Bryant to commence:

> any third party actions that she wants, and once those suits are commenced, she is authorized to apply to the civil motions

Judge to consolidate this legal separation action and the civil action for trial. . . .

Mrs. Bryant is entitled to pursue any civil litigation that she desires regarding transfers of community property on any theory that she feels necessary until Mr. Bryant answers interrogatories as well as any subsequent supplemental discovery requests . . ..

Fred Bryant sought revision of the Commissioner's order. The trial court affirmed the Commissioner's order, noting that its intent was "to permit [Elaine Bryant] to pursue efforts to establish her interest in any properties transferred to third parties without interference from [Fred Bryant] . . .".

In late 1987, after obtaining the above–described order, Sellers associated appellants Rosenberg and Koch to assist her in preparing an action on Elaine Bryant's behalf to recover the Bryants' properties (personal and real) which had been transferred after the parties' separation. On January 27, 1988, Elaine Bryant filed a summons and complaint which named 16 defendants. The complaint attached and incorporated legal descriptions of 20 parcels of real property which Elaine Bryant alleged had been owned by the marital community and then transferred fraudulently to the defendants after her separation from Fred Bryant. Lis pendens were also filed in Snohomish and Kitsap Counties.

In response to this complaint, the defendants moved for a more definite statement. On March 30, 1988, Judge Frank H. Roberts granted their motion and ordered the plaintiffs to identify the assets they alleged were improperly transferred, designate the county in which the property was located, and provide the approximate date of transfer.

Plaintiffs then filed an amended complaint on April 28, 1988. The complaint alleged all the defendants were in some way involved in the

transfers of [the Bryants'] community assets . . . without consideration or fraudulently by Frederick A. Bryant in concert with others, including Defendants herein named, to deprive and secret such assets from the knowledge and whereabouts of Plaintiffs and to remove those assets from the jurisdiction of

the King County Superior Court under the [Bryants'] legal separation action . . ..

The complaint further alleged that Fred Bryant acted as the alter ego of the defendant entities in violation of his fiduciary duty to the marital community and, with the knowledge of the defendants, concealed community assets from the plaintiffs. For each defendant, the complaint identified real property conveyed to that defendant by its county auditor number and the year the property was allegedly conveyed, transferred or encumbered.

Defendants moved to dismiss the amended complaint, alleging the plaintiffs had failed to comply with Judge Roberts' order. Judge Norma Smith Huggins granted the defendants' motion and dismissed the complaint without prejudice. Plaintiffs moved for reconsideration. Two of the defendants moved for sanctions on the ground that the plaintiffs' motion for reconsideration was frivolous. The trial court denied both motions.

Three weeks later, the defendants again moved for sanctions this time under CR 11 and RCW 4.84.185 (the frivolous claims statute). The motion sought sanctions against Elaine Bryant, attorneys Sellers, Rosenberg, and Koch, and against the law firm of Messehl, Rosenberg, Jeffers & Cotter. Respondents submitted affidavits alleging that over $90,000 in attorney's fees and costs were expended in dismissing plaintiffs' complaint and pursuing the motion for sanctions.

Judge Marsha Pechman (hereinafter the trial court) heard the motion for sanctions. The motion was argued in three separate hearings at which no testimony was taken. The respondents submitted a memorandum in support of their motion and the declaration of Gerald Bopp. In opposition to the motion, the appellants submitted a memorandum supported by an affidavit from Elaine Bryant and declarations from attorneys Sellers, Rosenberg and Koch.[1]

---

[1]The content of the affidavit and declarations will be discussed, where relevant, *infra.*

On November 2, 1988, the trial court entered the following findings of fact:

4. . . . . the investigation by Plaintiff's Attorneys into the facts was insufficient either for a proper pleading to be drafted, or for Plaintiff's Attorneys to formulate a well founded belief as to the truth of the allegations that they signed. The first complaint was unintelligible as to several of the parties. For example, parties were named in the caption who were never again mentioned in the body of the complaint.

5. . . . . adequate legal research was not done which would enable a proper pleading to be drafted, and that Plaintiff's Attorneys therefore did not possess a well founded belief as to the law applied to the complaint. This was specifically so with reference to the allegations of fraud.

6. Plaintiff's Attorneys presented affidavits which indicated that they relied heavily on remarks made by Commissioner Velategui and Judge Wartnik concerning the Court's suspicions of wrongdoing in the divorce action between the Bryants. These affidavits demonstrated that the Plaintiff's Attorneys failed to do the proper investigation. And to support those suspicions of the court, they rather used the court's remarks as justification over and over again for their positions. They substituted the court's remarks for their own analysis, investigation, and research.

. . . .

8. In sum, the failure to investigate, research, draft proper pleadings based on proper investigation and research, and their failure to correct when asked to do so, led to needless delay and has increased the costs of this litigation.

9. The drafting of the complaints, as well as the supporting data supplied by Plaintiff's Attorneys, was insufficient for the Court to make any determination as to the underlying merits of the cause of action.

Based on these findings, the trial court concluded that:

. . . Plaintiff's Attorneys, by failing to properly investigate, research, draft, and correct their pleadings, all as described herein, committed violations of Civil Rule 11, warranting sanctions.

The trial court imposed sanctions, ordering attorneys Rosenberg and Koch to pay $15,000 each and attorney Sellers to pay $10,000. She declined to impose any sanctions on Elaine Bryant or the law firm of Mussehl, Rosenberg, Jeffers & Cotter.

## II
### RULE 11 SANCTIONS

Appellants Rosenberg, Koch and Sellers first contend that the trial court abused its discretion by awarding CR 11 sanctions against them because in finding of fact 9 the trial court expressly refused to find that the complaint was without merit. Appellants claim that without such a finding, imposition of CR 11 sanctions is improper. Additionally, appellants argue that such a finding could not be made because the record establishes that the complaint was well grounded in fact and was warranted by existing law or a good faith argument in favor of extending existing law.

CR 11 provides, in pertinent part:

> Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record in his individual name . . .. The signature of a party or of an attorney constitutes a certificate by him that he has read the pleading, motion, or legal memorandum; that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

██ This court reviews a trial court's decision to impose CR 11 sanctions for abuse of discretion. *John Doe v. Spokane & Inland Empire Blood Bank,* 55 Wn. App. 106, 110, 780 P.2d 853 (1989); *In re Lasky,* 54 Wn. App. 841, 851–52, 776 P.2d 695 (1989); *Cooper v. Viking Ventures,* 53 Wn. App. 739, 742, 770 P.2d 659 (1989). A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds. *Lasky,* 54 Wn. App. at 854 (citing *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

### A. Merits of the Complaint

██ A plaintiff's complaint may be subject to CR 11 sanctions if the action is neither well grounded in fact nor warranted by existing law. *Spokane and Inland Empire,* 55

Wn. App. at 110. In determining whether a pleading satisfies the requirements of CR 11, the federal courts have focused principally on whether the pleading has merit. A complaint lacks merit if it is factually or legally frivolous. For purposes of CR 11, a complaint is *factually* frivolous if "'a competent attorney, after reasonable inquiry, could not form a reasonable belief that the complaint was well founded in fact.'" *Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc.,* 873 F.2d 1327, 1329 (9th Cir. 1989) (quoting *Greenberg v. Sala,* 822 F.2d 882, 887 (9th Cir. 1987)).[2]

A complaint is *legally* frivolous where it is not based on a plausible view of the law. *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 (9th Cir. 1988). "[T]he mere fact that a claim does not prevail, or that a court ultimately determines that a lawyer's view of the law is 'wrong,' is insufficient to warrant sanctions under any aspect of Rule 11." *Townsend v. Holman Consulting Corp.,* 881 F.2d 788, 792 (9th Cir. 1989) (citing *Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1159 (9th Cir. 1987)); *accord, Jensen,* 873 F.2d at 1329 (quoting *Hudson,* 836 F.2d at 1159); *Spokane and Inland Empire,* 55 Wn. App. at 111. Thus, CR 11 sanctions are not appropriate unless it can be determined that the complaint is frivolous, *i.e.,* without factual or legal basis. *Townsend,* 881 F.2d at 792–93.

Here, as the appellants point out, the trial court specifically declined to find that the plaintiffs' complaint was without merit despite respondents' request that it do so.[3]

---

[2]Because Washington's CR 11 was modeled after and is substantially similar to the federal rule, we consider federal decisions interpreting Federal Rule of Civil Procedure 11 in construing CR 11. *Viking Ventures,* 53 Wn. App. at 742 (citing *Miller v. Badgley,* 51 Wn. App. 285, 300, 753 P.2d 530, *review denied,* 111 Wn.2d 1007 (1988)).

[3]The trial court commented at the hearing that the issue was not whether the plaintiff had a meritorious claim, but whether her claim "has been well pleaded such that others can respond without having to go to needless expense[,] without having to hire counsel to sort out what the complaint means". Thus, it appears

The trial court's refusal to determine whether the complaint was frivolous could be viewed as a finding that the complaint was *not* frivolous. *See Mitchell v. Straith,* 40 Wn. App. 405, 412, 698 P.2d 609 (1985); *accord, Pacific Northwest Life Ins. Co. v. Turnbull,* 51 Wn. App. 692, 702, 754 P.2d 1262, *review denied,* 111 Wn.2d 1014 (1988).

■ However, even if we consider the absence of a finding to be simply a failure to make any finding at all, remand to the trial court is unnecessary. The factual record before the trial court consisted entirely of affidavits. Therefore, the trial court is in no better a position to evaluate the evidence than is this court. *Lobdell v. Sugar 'N Spice, Inc.,* 33 Wn. App. 881, 887, 658 P.2d 1267 (appellate courts may independently review evidence consisting of written documents and make the required findings), *review denied,* 99 Wn.2d 1016 (1983).

Moreover, remand is unnecessary because the record is devoid of any evidence from which the trial court *could* have determined that the complaint lacked a factual and legal basis. The uncontroverted affidavit of Elaine Bryant was submitted to the trial court in opposition to the respondents' motion for CR 11 sanctions. It sets forth very specific allegations of the defendants' improper participation with Fred Bryant in a number of transactions involving real and personal property owned by the Bryants' marital community.[4] It is supported by many documents

the trial court misunderstood that unless the pleading is "interposed for any improper purpose" (*see* CR 11), a finding that the complaint lacks merit is a prerequisite to imposing CR 11 sanctions.

[4]For example, shortly after the Bryants separated, Fred Bryant, unbeknownst to Elaine, used her power of attorney to transfer all of the Bryants' community interest in Halo Homes, Inc. (a corporation owned by the Bryants since 1961) to their eldest daughter for no consideration. Fred Bryant then proceeded to transfer title to various real properties owned by the community to Halo Homes for little or no consideration.

One month after the Bryants' separation, Gerald Bopp, one of the attorneys representing the defendants, created Joseph Tree, Inc. Fred Bryant then used Elaine's power of attorney to transfer various parcels of real property owned by the Bryants' marital community to Joseph Tree in violation of the restraining

from several sources, including the Washington Secretary of State, Corporations Division, the State Department of Licensing, and the Recording Offices of King, Snohomish and Kitsap Counties. This affidavit and the attached documents provide substantial evidence, indeed unequivocal evidence, that appellants had a factual basis for filing the complaint alleging that the defendants were not bona fide purchasers or recipients of the Bryants' community assets.

Respondents appear to concede that these affidavits establish a factual basis for the complaint.[5] However, they contend that appellants' affidavits should not be considered, relying principally on *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194 (7th Cir. 1985). Below, respondents apparently persuaded the trial court that *Rodgers* prohibited consideration of the affidavits submitted in opposition to the CR 11 motion and required the court to confine its review to the complaint itself.

We have carefully reviewed *Rodgers* and, contrary to respondents' contention, the court did not "squarely hold[] that a plaintiff may not withhold evidence which if provided would have supported an action, and then try to avoid sanctions after the dismissal of a suit by providing it." The *Rodgers* court upheld the imposition of sanctions because "[a] large part of Rodgers' complaint had no basis in law, and a majority of his allegations [were] conclusory ones, not factual ones . . .". *Rodgers*, 771 F.2d at 205. Thus, the court's rejection of counsels' last–ditch effort to avoid sanctions by claiming that privileged information in the client file would supply the necessary factual basis for

order entered in the Bryants' dissolution proceeding. Most of these transactions involved little or no consideration. In addition, Bopp notarized Fred Bryant's signature when he signed for Elaine Bryant by using her power of attorney.

Soon after the Bryants separated, Fred Bryant created a trust for the benefit of some, but not all, of his children, naming his eldest daughter as trustee. He then used Elaine's power of attorney to transfer various parcels of real estate, including the family home in Eglon, to the trust.

[5]In their brief, respondents state that if the affidavits had been included in the complaint, "it is probable that we would not now be in the Court of Appeals."

the complaint must be read in context: sanctions were imposed in *Rodgers* primarily because the complaint lacked a *legal* basis under *any* conceivable set of facts.

Furthermore, we reject respondents' contention that *all* the facts supporting a claim must be set forth in the complaint because it is inconsistent with our notice pleading rule.[6] Moreover, courts should be especially reluctant to impose sanctions for factual errors or deficiencies in the complaint before there has been an opportunity for discovery. *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1508 (9th Cir. 1987) (citing *Greenberg,* 822 F.2d at 886). The fact that some of the defendants here might be able to establish that they obtained community assets as good faith bona fide purchasers does not mean that CR 11 sanctions are appropriate at this juncture.

It is also evident that there is an adequate legal basis for the complaint. Plaintiff's complaint sought to invalidate the defendants' rights or interests with respect to certain community assets which were conveyed or encumbered by Fred Bryant after the Bryants' separation in direct violation of the court's restraining order, or with the intent of removing the assets from the jurisdiction of the family court. The complaint asserted an equitable claim for restitution of the properties as well as a claim that the defendant recipients held these in constructive trust for the benefit of the marital community. These claims appear to have merit based on existing law or a good faith argument in favor of extending existing law.[7]

---

[6]Washington's notice pleading rule does not require parties to reveal all the facts supporting their claim but instead contemplates that discovery will provide parties with the opportunity to learn more detailed information about the nature of a complaint. *See Schoening v. Grays Harbor Comm'ty Hosp.,* 40 Wn. App. 331, 337, 698 P.2d 593 ("A claim is adequately pleaded if it contains a short, plain statement showing that the pleader is entitled to relief, and a demand for judgment based thereon. It is not necessary for a plaintiff to plead facts 'constituting a cause of action.'" (Citation omitted.)), *review denied,* 104 Wn.2d 1008 (1985).

[7]RCW 26.16.030 (neither spouse has the authority to make a gift of community assets without the consent of the other spouse); RCW 19.40.041 (the Uniform

Thus, the record clearly establishes that appellants filed a complaint that was not frivolous.[8] We hold, consistent with federal law, that this is all that is required under CR 11. *Townsend,* 881 F.2d at 792–93. The trial court abused its discretion by imposing Rule 11 sanctions when it was unable to find that the complaint lacked merit. It also erred by refusing to consider the affidavits submitted to establish the factual basis for the complaint. These affidavits could only support a finding that the complaint was *not* without merit.

### B. Prefiling Inquiry

The trial court devoted considerable attention to the question of whether appellants had conducted a reasonable prefiling inquiry. However, only if the trial court is able to determine that the complaint is factually and/or legally frivolous need it consider whether the attorney's prefiling inquiry was reasonable. Since no such threshold finding could be made in this case, the trial court's findings and conclusions in that regard are irrelevant. Nevertheless, because CR 11 case law is still developing in Washington, we address the issue of prefiling inquiry to point out that the trial court's analysis was, in any event, erroneous.

---

Fraudulent Transfer Act); *Viewcrest Coop. Ass'n v. Deer,* 70 Wn.2d 290, 292–93, 422 P.2d 832 (1967) (even in the absence of actionable fraud, if a party misappropriates property and transfers it to a third party, the latter holds the property as a constructive trustee for the beneficiary unless the third party is a bona fide purchaser for value); *Peters v. Skalman,* 27 Wn. App. 247, 251, 617 P.2d 448 (each spouse stands in a relationship of trust to the other and, even after separation, owes the highest fiduciary duty to preserve the community assets for the benefit of the community), *review denied,* 94 Wn.2d 1025 (1980); and *Geisey v. Holberg,* 185 Md. 642, 45 A.2d 735 (1946) (a lender who accepted the husband's encumbrance of community real property without the wife's consent was put on inquiry notice and therefore could not later enforce the terms of the loan and foreclose on the property).

[8]We note that although appellants have not appealed from Judge Huggins' order dismissing their amended complaint, whether dismissal was proper is debatable. The amended complaint seems to comply precisely with the requirements imposed by Judge Roberts.

■ Whether the appellants' prefiling inquiry satisfies the requirements of CR 11 is measured against an objective standard. *Spokane and Inland Empire*, 55 Wn. App. at 110. Although an attorney's "'blind reliance' on a client . . . will seldom constitute a reasonable inquiry", counsel's consultation with his client and review of independent evidence supporting the claim is generally sufficient. *Miller v. Badgley*, 51 Wn. App. 285, 302, *review denied*, 111 Wn.2d 1007 (1988).

Here, the court's findings of fact regarding appellants' failure to make a reasonable inquiry of the facts and law do not address objective factors. The trial court does not appear to have given any consideration to the substantial and uncontroverted affidavit evidence before it. For example, Elaine Bryant's affidavit, submitted in opposition to the motion for sanctions, specifically recites that in bringing the action against the various defendants, she discussed and "passed on" to her attorneys various documents and information about transactions involving the Bryants' community property. Declarations submitted by Koch, Rosenberg and Sellers also recite that before filing the complaint, the attorneys consulted with Elaine Bryant, reviewed the documents, and, at least in Sellers' case, conducted an independent search for documents. These affidavits establish that the appellant conducted a reasonable prefiling inquiry.

■ Finally, we must observe that the focus of the court's findings appears to be on the inartful drafting of the complaint and plaintiff's apparent inability to amend to comply with Judge Roberts' order.[9] Imposition of CR 11 sanctions is improper where other rules more directly apply. *Spokane and Inland Empire*, 55 Wn. App. at 111;

---

[9]In its findings of fact, the trial court found that the appellants' investigation into the factual basis for the complaint was insufficient because the complaint they filed was "unintelligible". In addition, the court found the appellants' legal research was inadequate because it did not enable them to draft a "proper pleading". Finally, the court also cited appellants' "failure to correct [the complaint] when asked to do so" as grounds for CR 11 sanctions.

*see also Zaldivar v. Los Angeles,* 780 F.2d 823, 829–30 (9th Cir. 1986).

## III
### ATTORNEYS' FEES

Both appellants and respondents request attorneys' fees on appeal, citing CR 11 which is made applicable to appeals by RAP 18.7. Since we reverse the trial court's imposition of CR 11 sanctions below, we necessarily reject respondents' request for CR 11 sanctions on appeal. Appellants, on the other hand, urge us to impose CR 11 sanctions on the respondents, arguing that respondents' original motion for CR 11 sanctions was without merit.

CR 11 does not, by its terms, prohibit appellate courts from imposing sanctions against a party who brings a meritless CR 11 motion even where the trial court grants that motion below. However, when respondents filed their motion there was no Washington case, although ample federal authority, which clearly stated that there must be a finding that the complaint is frivolous in order to impose CR 11 sanctions. Thus, while we find respondents' counsels' conduct in pursuing CR 11 sanctions to be questionable given the apparent factual and legal merit to Elaine Bryant's claim, we decline to impose sanctions for filing the CR 11 motion.

On the other hand, we find no reason to excuse counsel Bolin for moving to disqualify appellants' counsel on appeal, Edwards & Barbieri. In his motion, Bolin represented to the court that he would be asserting a claim on cross appeal against the Bryants' marital community and that therefore Edwards & Barbieri would be in a position of conflict of interest in its representation of Elaine Bryant. At the time the motion was filed, any potential conflict of interest between Elaine Bryant and the Bryants' marital

---

The trial court stated orally at the hearing that had the appellants made a reasonable inquiry into the facts, they "would have been able to supply the missing facts, missing dates, missing allegations that the Court requires under [CR] 12(e)."

community had not sufficiently ripened to require disqualification. However, when Bolin's brief was untimely filed, no such claim against the marital community was included. Thus, at that juncture, it became clear that there was no factual or legal basis for Bolin's claim that Edwards & Barbieri's representation of Elaine Bryant and the Bryant marital community created a conflict of interest.

In his motion for reconsideration, Bolin raises a number of issues, but only one merits further discussion. Bolin contends that an affidavit which he submitted to the appellate Commissioner in support of his motion to disqualify provided a legal basis for that motion. The affiant, Professor John Strait, concluded that Edwards & Barbieri had a conflict of interest in representing both Elaine Bryant and her attorneys.

In his affidavit, Strait states that he based his opinion on a number of documents supplied by Bolin. Although he lists these documents, they are not attached to the affidavit. We are unable to identify with certainty the precise documents upon which the expert relied and therefore cannot discern the factual basis for his opinion.[10]

However, it appears Strait based his opinion on misleading "facts" supplied by Bolin himself. These facts, at best, fail to tell the entire story. Specifically, in concluding that a conflict of interest existed between Elaine Bryant and the attorneys, Strait was asked to assume that Rosenberg and Koch relied on the "representations" of Elaine Bryant in filing the complaint. Strait also assumed that in their appeal from the trial court's imposition of CR 11 sanctions on them, the appellants would attempt to shift the blame to Elaine Bryant. However, the record establishes that Rosenberg and Koch did not rely on Bryant's "representations" of the facts, but on public and other *documents*

---

[10]For example, the affidavit refers to "a copy of a letter dated January 26, 1988 to attorneys Rosenberg and Koch and others and attachments thereto including a copy of the Complaint, Order of Dismissal, and the transcript of a court hearing on CR 11 sanctions arising from *Bryant v. Joseph Tree*."

which they received from Bryant and attorney Sellers. Furthermore, the record is entirely devoid of any indication that the appellants' defenses were antagonistic to those of Elaine Bryant.[11]

We conclude that Bolin's conduct in moving to disqualify was without merit.[12] Bolin cannot insulate himself from CR 11 sanctions by claiming reliance on an expert's opinion when that opinion is based on incomplete "facts" provided by Bolin himself.

Counsel for appellant has submitted an affidavit, which is uncontroverted, stating that Edwards & Barbieri expended $2,980.70 responding to Bolin's motions. We have reviewed the affidavit, find that the request for fees is reasonable, and impose sanctions in that amount against counsel Eugene Bolin.

Reversed in part, affirmed in part.

SWANSON and FORREST, JJ., concur.

After modification, further reconsideration denied May 22, 1990.

Review granted at 115 Wn.2d 1027 (1990).

---

[11]Bolin also contends that because Strait alternatively concluded that there was a conflict of interest between Elaine Bryant and the Bryants' marital community, his motion to disqualify had a legal basis. However, again, Strait does not appear to have been aware of all the material facts relative to this issue. First, it is unclear whether the Bryant marital community was even in existence by the time this appeal was instituted. Second, even if it were, Commissioner Velategui and Judge Wartnik had specifically authorized Elaine Bryant to pursue claims on its behalf. Finally, as we have explained above, although at the time Bolin filed his motion to disqualify, he asserted that he would bring a cross appeal against the marital community, he never did so.

[12]Bolin also filed motions to seal the file, conduct an in camera hearing on the motion to disqualify, and modify the clerk's ruling on extension of time to file respondent's brief and a countermotion for sanctions and terms for appellants' motion to strike their motion to disqualify and for terms and an expedited hearing. The factual and legal bases for these motions are also questionable.